FILED\_\_\_\_\_ ENTERED
\_\_\_\_\_ LOGGED\_\_\_\_\_ RECEIVED

NOV 09 2017

DEH/LJW: USAO # 2017R00772

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| UNITED STATES OF AMERICA<br><br>v.<br><br>ERIC TROY SNELL,<br><br>Defendant. | UNDER SEAL<br><br>Criminal No. CCB-17-0602<br><br>(Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Cocaine, 21 U.S.C. § 841; Aiding and Abetting, 18 U.S.C. § 2) |
|---|---|

## INDICTMENT

### COUNT ONE
(Conspiracy to Distribute and Possess with Intent to Distribute Heroin and Cocaine)

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

1. Jemell Rayam was a Detective in the Baltimore Police Department ("BPD") and was assigned to the Gun Trace Task Force ("GTTF") within the Operational Investigation Division of the BPD.

2. Wayne Jenkins was a Sergeant in the BPD and was the officer in charge of the GTTF.

3. Defendant ERIC TROY SNELL and Rayam received training together at the BPD academy and became associates. Defendant SNELL was a police officer in the BPD until about March 8, 2008. Defendant SNELL became an officer in the Philadelphia Police Department on or about September 29, 2014 and was assigned to the 35th District in Philadelphia at the time of this Indictment.

4. From no later than October 2016, and continuing until at least June 26, 2017, in the District of Maryland and elsewhere,

**ERIC TROY SNELL**

the defendant herein, did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, including, but not limited to Jemell Rayam, to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1).

OBJECT OF THE CONSPIRACY

5. The object of the charged defendant and his co-conspirators was to obtain and sell heroin and cocaine.

MANNER AND MEANS

6. It was part of the conspiracy that Defendant SNELL, and co-conspirator Rayam and others known and unknown to the grand jury, discussed and planned with each other the sale of illegal narcotics that had been obtained or seized by members of the BPD in Maryland. It was further part of the conspiracy that Defendant SNELL and others known and unknown to the grand jury, including Rayam, formulated a plan and agreement which, among other things, included:

    a. the acquisition of United States Currency by selling narcotics, including heroin and cocaine;

2

b. the repayment of drug debts owed to co-conspirators by depositing cash into co-conspirator bank accounts;

c. the method and means of transportation of narcotics across multiple states, and the decision to meet at a highway rest stop to conduct a narcotics transaction;

d. the use of cellular phones and the use of coded language to discuss narcotics trafficking;

e. the role each participant would play in the drug conspiracy;

f. the recruitment of sources, including family members of the Defendant, to sell the drugs;

g. deterring co-conspirators from cooperating with authorities by threatening to harm their children; and

h. plans to avoid detection and apprehension by legitimate law enforcement.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

7. On or about October 3, 2016, Jenkins, Rayam and detectives in the BPD, acting in their capacity as police officers, engaged in a high-speed police chase of a vehicle driven by G.H. G.H. fled and threw over 9 ounces of cocaine out of the window of his vehicle before crashing his vehicle near Mondawmin Mall in Baltimore, Maryland.

8. Near the scene of the crash, BPD officers retrieved the cocaine and Jenkins told Rayam to sell most of the cocaine and give Jenkins proceeds of the sale, which Rayam agreed to do.

9. On or about October 18, 2016, after learning from Rayam that Rayam had cocaine, Defendant SNELL asked Rayam to provide him with the cocaine that was stolen from G.H. and not submitted as evidence to the BPD. Rayam agreed to do so.

10. On or about October 20, 2016, Rayam traveled to Philadelphia, PA, and met Defendant SNELL at his residence. Rayam provided cocaine to Defendant SNELL and Defendant SNELL made arrangements to meet with Defendant Snell's brother who would sell the cocaine for Defendant SNELL and Rayam.

11. On or about October 20, 2016, Rayam, Defendant SNELL, and Defendant Snell's brother met and discussed the sale of the cocaine, the price the cocaine should be sold for, the amount of money that Defendant Snell's brother would pay Defendant SNELL after the sale of the cocaine, and the amount of money that Defendant SNELL would pay Rayam after the sale of the cocaine. Defendant SNELL gave his brother the cocaine that Rayam had given him and that had been taken from G.H.

12. On or about October 23, 2016, Defendant SNELL and Rayam agreed that Rayam would provide Defendant SNELL with heroin for Defendant SNELL to sell and distribute.

13. On or about October 24, 2016, Rayam traveled to Philadelphia and provided Defendant SNELL with approximately 80 grams of heroin that Rayam had received from Jenkins to sell.

14. On or about October 27, 2016, Defendant SNELL communicated to Rayam that he had received "2k" ($2,000) from the sale of illegal drugs.

15. On or about October 28, 2016, Defendant SNELL agreed to deposit proceeds from the sale of illegal drugs in Rayam's PNC bank account.

16. On or about October 28, 2016, Defendant SNELL deposited $1,000 cash into Rayam's bank account at a PNC branch in Philadelphia.

Case 1:17-cr-00602-CCB   Document 1   Filed 11/09/17   Page 5 of 6

17. On or about October 28, 2016, and November 6, 2016, Defendant SNELL and Rayam discussed the repayment of the illegal drug debt and the demands made by Jenkins for timing of the repayment of the drug debt owed to Jenkins.

18. On or about November 7, 2016, Defendant SNELL sent a text message to Rayam agreeing to pay Rayam an additional "25", (or $2,500) for additional sales of the illegal drugs.

19. On or about November 8, 2016, Defendant SNELL met his brother and received cash from the sales of illegal drugs he had received from Rayam.

20. On or about November 9, 2016, Defendant SNELL deposited $2,500 in proceeds from the sales of illegal drugs into Rayam's PNC bank account.

21. Between October 24, 2016 and November 15, 2016, Defendant SNELL distributed, or caused to be distributed, some of the heroin provided by Rayam.

22. On or about November 11, 2016, Defendant SNELL pulled out a large wad of several thousand dollars in cash and paid Rayam several hundred dollars from the sale of illegal drugs.

23. On or about November 15, 2016, Defendant SNELL agreed with Rayam to meet at or near the Delaware House Travel Plaza so that Defendant SNELL could return the remaining heroin to Rayam for Rayam to distribute.

24. On or about November 15, 2016, Defendant SNELL traveled on I-95 to the Delaware House Travel Plaza, provided approximately 40 grams of heroin to Rayam, and then returned to Philadelphia. Rayam distributed the heroin provided by Defendant SNELL using other associates of his.

25. Following Rayam's arrest, on June 26, 2017 Defendant SNELL spoke with Rayam on the recorded jail phone system where Rayam was detained. Rayam asked: "Your brother never said anything ... everything cool yo?" and Defendant SNELL assured Rayam that his brother had not said anything about their illegal drug trafficking. Defendant SNELL instructed Rayam to "say less" on the recorded jail phones so that their illegal drug trafficking operation would not be detected by law enforcement. Defendant SNELL told Rayam to "stand tall" and said he would "keep an eye" on Rayam's kids, which Rayam perceived as a threat to harm Rayam's children if Rayam told authorities about Defendant SNELL's illegal drug trafficking.

21 U.S.C. § 846.
18 U.S.C. § 2.

*Stephen M. Schenning /DEH*
STEPHEN M. SCHENNING
ACTING UNITED STATES ATTORNEY

A TRUE BILL:

11/9/17
Date

**SIGNATURE REDACTED**

Foreperson