IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | * NO. 17-553 <br> * <br> * UNDER SEAL <br> * |

*******

## APPLICATION OF THE UNITED STATES
## FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

The United States of America, moving by and through its undersigned counsel, respectfully submits under seal this *ex parte* application for an Order pursuant to 18 U.S.C. § 2703(d). The proposed Order would require:

(1) AT&T, a cellular service provider, located in West Palm Beach, Florida, to disclose certain records and other information pertaining to the cellular telephone assigned call numbers **(267) 228-5466 ("Target Telephone 1"** and **"Account")** as described in Part I of Attachment A-1, to the proposed Order. The records and other information to be disclosed are described in Part II of Attachment A-1. In support of this application, the United States asserts:

### LEGAL BACKGROUND

1. AT&T and its affiliates ("Service Provider") is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15). Accordingly, the United States may use a court order issued under § 2703(d) to require Service Provider to disclose the items described in Part II of Attachment A-1, as these records pertain to a subscriber of electronic communications service and are not the contents of communications.[1] *See* 18 U.S.C. § 2703(c)(1).

---

[1] On May 31, 2016, the Fourth Circuit issued an *en banc* decision holding that the Government does not violate the Fourth Amendment when it obtains historical cell site location information from a service provider with a court order issued under § 2703(d). *U.S. v. Aaron*

2. This Court has jurisdiction to issue the proposed Order because it is "a court of competent jurisdiction," as defined in 18 U.S.C. § 2711(3). *See* 18 U.S.C. § 2703(d). Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. 2711(3)(A)(i).

3. A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation. The following information was provided to the undersigned by law enforcement.

## THE TARGET TELEPHONE

1. **Target Telephone 1** is subscribed to ERIC SNELL, 2815 Ryerson Place, Philadelphia Pennsylvania 19114. Law enforcement believes this telephone is utilized by ERIC SNELL. Pennsylvania driver's license records show that SNELL resides at 2815 Ryerson Place, Philadelphia, Pennsylvania 19114 and a review of the contacts in RAYAM's phone show an entry for ERIC SNELL with telephone number **(267) 228-5466 (Target Telephone 1)**.

## THE RELEVANT FACTS

4. The United States is investigating allegations of corruption and other criminal conduct by several members of the Baltimore Police Department and other civilians who were

---

*Graham*, No. 12-4659, at *6 (4th Cir. May 31, 2016) (*en banc*).

not members of the Baltimore Police Department. The investigation concerns possible violations of, inter alia, 18 U.S.C. § 1962(c), RICO conspiracy, and 18 U.S.C. § 1962(d), RICO.

5. Beginning in 2016, the FBI initiated an investigation involving police officers assigned to the Baltimore Police Department's ("BPD") Gun Trace Task Force ("GTTF"). The investigation established that multiple police officers within the GTTF violated the legitimate purposes of the BPD in order to enrich themselves through illegal conduct, including robbery, extortion under color of law, making false statements to conceal illegal activities, and committing time and attendance fraud. These officers included Sergeant Wayne Earl JENKINS, Detective Momodu Bondeva Kenton GONDO aka "G Money" and "Mike," Detective Jemell Lamar RAYAM, Detective Daniel Thomas HERSL, Detective Marcus Roosevelt TAYLOR, Detective Maurice Kilpatrick WARD and Detective Evodio Calles HENDRIX (collectively, the "Defendants").

6. On February 23, 2017, a Special Grand Jury sitting in the District of Maryland returned a sealed indictment charging the Defendants with: RICO conspiracy, in violation of 18 U.S.C. § 1962(c) and RICO, in violation of 18 U.S.C. § 1962(d) and other related criminal offenses. *See United States v. Momodu Bondeva Kenton GONDO, et al.; Criminal Docket No. JKB-17-0106,* incorporated by reference. On February 23, 2017, a Special Grand Jury sitting in the District of Maryland returned a sealed third superseding indictment charging Detective GONDO and five non-officer defendants with conspiracy to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846, possession with intent to distribute heroin, in violation of 21 U.S.C. § 841, and other related criminal offenses. *See United States v. Antonio Shropshire, et al.; Criminal Docket No. JKB-16-51,* incorporated by reference. A Superseding Indictment was returned on June 22, 2017, charging Defendant JENKINS, Defendant HERSL, and Defendant

HCS-0003

TAYLOR with RICO Conspiracy, in violation of 18 U.S.C. § 1962(d); RICO, in violation of 18 U.S.C. § 1962(c); Hobbs Act Robbery, in violation of 18 U.S.C. § 1951; Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c); and Aiding and Abetting, in violation of 18 U.S.C. § 2. *See United States v. Wayne Jenkins, et al.; Criminal Docket No. JKB-16-51*, incorporated by reference.

7. RAYAM has been interviewed and has provided information about ERIC SNELL (hereinafter SNELL), an Officer with Philadelphia Police Department who was previously an officer with the Baltimore Police Department. In the fall of 2016, RAYAM provided SNELL with drugs to sell. The drugs that were provided by RAYAM were obtained by RAYAM's supervisor, JENKINS.

8. Sometime between approximately the fall of 2016 and March 1, 2017, the time of RAYAM's arrest, RAYAM provided SNELL with drugs to sell on two occasions.

9. On the first occasion, RAYAM first tried to sell the drugs through a friend in eastern Pennsylvania however, the friend was unable to sell all of the drugs so RAYAM travelled to Pennsylvania to pick them up.

10. RAYAM drove to SNELL's house and the two of them then drove to SNELL's brother's home in Philadelphia, Pennsylvania. SNELL's brother entered the vehicle with SNELL and RAYAM where they spoke and SNELL's brother was given the drugs.

11. RAYAM received multiple payments for the drugs given to SNELL's brother. The first payment was deposited into RAYAM's PNC Bank account for the amount approximately $1,500 to $2,000. FBI investigators have reviewed PNC Bank records for RAYAM and bank records appear to show that there were approximately three cash deposits between 9/02/2016 through 11/09/2016 made at a PNC Bank branch in Philadelphia, PA, approximately one mile

HCS-0004

from SNELL's home address. The deposit made on September 2, 2016 for $250, the deposit made on October 28, 2016 was for $1,000 and the deposit made on November 9, 2016 was for $2,500. A review of pen register records for RAYAM's telephone revealed that on both October 28, 2016 and November 9, 2016 there were approximately five contacts between RAYAM's telephone and **Target Telephone 1**.

12. On a second occasion, RAYAM took heroin to SNELL and SNELL gave the heroin to his brother to sell. SNELL's brother was unable to sell the heroin and it was returned to RAYAM at a travel plaza on Interstate 95.

### REQUEST FOR ORDER

13. The facts set forth in the previous section show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A-1 are relevant and material to an ongoing criminal investigation. Specifically, these items will help the United States to identify and locate the individual(s) who are responsible for the events described above, and to determine the nature and scope of their activities. Accordingly, the United States requests that Service Providers be directed to produce all items described in Part II of Attachment A-1 to the proposed Order.

14. The United States further requests that the Order require the Service Provider not to notify any person, including the subscribers or customers of the account(s) listed in Part I of Attachment A-1, of the existence of the Order until further order of the Court. See 18 U.S.C. 2705(b). This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court

HCS-0005

order." Id. In this case, such an order would be appropriate because the requested Order relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the requested Order will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. See 18 U.S.C. § 2705(b)(2), (3), (5).

15. The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

Stephen M. Schenning
Acting United States Attorney

By: _/s/ Derek Hines_

Derek E. Hines
Leo J. Wise
Assistant United States Attorneys

HCS-0006

ATTACHMENT A-1

I. **The Account(s)**

The Order applies to records and information associated with the cellular telephone assigned call numbers **(267) 228-5466** ("Target Telephone 1" and "Account").

II. **Records and Other Information to Be Disclosed**

AT&T is required to disclose the following records and other information, if available, to the United States for each Account listed in Part I of this Attachment, for the time period **August 7, 2016 to present**:

- A. The following information about the customers or subscribers of the Account:

    1. Names (including subscriber names, user names, and screen names);

    2. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    3. Local and long distance telephone connection records;

    4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    5. Length of service (including start date) and types of service utilized;

    6. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International

Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7. Means and source of payment for such service (including any credit card or bank account number) and billing records.

B. All records and other information (not including the contents of communications) relating to the Account, including:

1. Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers); and

3. All data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from each cellular telephone or device assigned to the Account, including data relating to the distance of the relevant device(s) from the cell tower, such as per call measurement data (PCMD).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE APPLICATION OF THE            *
UNITED STATES OF AMERICA            *   NO. 17-553
FOR AN ORDER PURSUANT TO            *
18 U.S.C. § 2703(d)                 *   UNDER SEAL
                                    *
                                  *******

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2703(d), requesting that the Court issue an Order requiring AT&T and its affiliates, an electronic communications service provider and/or a remote computing service located in West Palm Beach, Florida, to disclose the records and other information described in Attachment A-1 to this Order.

The Court finds that the United States has offered specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation.

The Court determines that there is reason to believe that notification of the existence of this Order will seriously jeopardize the ongoing investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED, pursuant to 18 U.S.C. § 2703(d), that AT&T shall disclose to the United States the records and other information described in Attachment A-1 to this Order.

IT IS FURTHER ORDERED under 18 U.S.C. § 2705(b) that AT&T shall not disclose the existence of the application of the United States, or the existence of this Order of the Court, to the subscribers of the account(s) listed in Attachment A-1, or to any other person, unless and until

otherwise authorized to do so by the Court, except that AT&T may disclose this Order to an attorney for AT&T for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

8-7-17
Date

THE HON. BETH P. GESNER
UNITED STATES MAGISTRATE JUDGE

I hereby attest and certify on 8/7/17 that the foregoing document is a full, true and correct copy of the original on file in my office and in my legal custody.

FELICIA C. CANNON
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

By _____ Deputy