AO 102 (01/09) Application for a Tracking Warrant      AUSA Maiatico (EDPA) & AUSA Derek Hines (DMD) authorizing

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

In the Matter of the Tracking of )
*(Identify the person to be tracked or describe* )
*the object or property to be used for tracking)* )
The cellular phone bearing number (267) 228-5466 )     Case No.   17-1515-M
)
)

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of
21   U.S.C. §   846   . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The activity in this district relates to domestic or international terrorism.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S/A Joseph W. O'Connor, FBI
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date:   11-9-17

*Judge's signature*

City and state:   Philadelphia, PA

The Hon. Thomas J. Rueter, U.S.M.J.
*Printed name and title*

AO 104 (Rev. 11/13) Tracking Warrant  *AUSA Maiotico (EDPA) & AUSA Derek Hines (DMD) appearing*

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

In the Matter of the Tracking of )
*(Identify the person, property, or object to be tracked)* )
)   Case No.  17 - 1515-m
The cellular phone bearing number (267) 228-5466 )
)
)

## TRACKING WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district;   ☐ is not now located in this district, but will be at execution;   ☐ the activity in this district relates to domestic or international terrorism;   ☐ other:

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☑ using the object    ☐ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☐ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device:

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device by November 19, 2017    *(not to exceed ten days)* and may continue use for   45   days *(not to exceed 45)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☐ into the vehicle described above    ☐ onto the private property described above

☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☐ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)*  Duty Magistrate                          and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*
☑ for   30   days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____

Date and time issued:  11-9-17  1:30p—          _____
Judge's signature

City and state:   Philadelphia, PA          The Hon. Thomas J. Rueter, U.S.M.J.
*Printed name and title*

TW01-0006

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE CELLULAR
TELEPHONE ASSIGNED CALL
NUMBERS **(267) 228-5466** whose wireless
service provider is AT&T, a company
headquartered at 11760 US Highway 1, Suite
600, North Palm Beach, Florida, 33408

$17-1515-m$

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
## A TRACKING WARRANT

### INTRODUCTION

I, Joseph W. O'Connor, Special Agent with the Federal Bureau of Investigation
(FBI), being duly sworn, depose and state that:

1.     Your affiant, Special Agent, Joseph W. O'Connor is an investigative or law
enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an
officer of the United States who is empowered by law to conduct investigations of, and to make
arrests for, offenses enumerated in 18 U.S.C. § 2516. Your affiant is a Special Agent of the Federal
Bureau of Investigation (FBI) currently employed by the Philadelphia Division.

2.     I am a law enforcement officer with the Federal Bureau of Investigation who has
been so employed since 2017.   For the past month I have been assigned to one of the Public
Corruption squads in the Philadelphia Division of the FBI.   This Public Corruption squad
investigates crimes involving the violation of Civil Rights, fraud against the government, and law
enforcement corruption.   I have participated in investigations involving: Civil Rights violations
and government fraud investigations.   Prior to my assignment with the Public Corruption squad I
was a Certified Public Accountant working for Ernst & Young in Philadelphia. Your affiant has

TW01-0009

had the opportunity to discuss the facts of this investigation with the FBI Baltimore Division case agent.

3.    Through my discussion with the Baltimore case agent, I have learned about the illegal activities of drug trafficking organizations and other organized groups, including unlawful drug distribution, public corruption (involving prison and other law enforcement personnel), and use of cellular telephones to facilitate illegal activity, aggravated assaults, and homicides. I have become familiar with techniques useful in identifying this behavior, including the use of confidential informants, physical and electronic surveillance, telephone toll analysis, and investigative interviews. I have become familiar with the terminology and codes used by narcotic suppliers to thwart detection by law enforcement.

4.    I have personally consulted with the case agent in charge of the investigation of the offenses referred to herein, who has reviewed reports and has had discussions with other Special Agents, Task Force Officers (TFOs), and employees of the FBI, as well as other law enforcement agencies related to the investigation of the Defendant. I am fully familiar with the facts and circumstances of the investigation.    The statements contained in this affidavit are on information provided to me by Special Agents and TFOs of the FBI (collectively, the "Investigators"). The information contained in this affidavit is also based in part on: information provided by RAYAM, some of which is corroborated by two other cooperating Baltimore City Police Officers who were indicted – Former Detectives Momodu GONDO and Maurice WARD. As explained below, the information is also partially corroborated by court authorized toll records, historical cell site information, bank records, including photographs of SNELL making deposits, text messages on RAYAM's phone, and a recorded jail call with SNELL after RAYAM's arrest. Because this affidavit is being submitted for the limited purpose of securing authorization for the execution of

2

TW01-0010

a search and seizure warrant, I have not included each and every fact known to me concerning this investigation. Nor, do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit. Your affiant has not, however, excluded any information known to your affiant which would defeat the determination of probable cause. I have set forth only the facts that I believe necessary to establish the foundation of probable cause in support of this application for search and seizure warrant. Based on evidence developed during the course of the investigation and outlined in part below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that SNELL did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, including, but not limited to, RAYAM, to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1) (the "Target Offense").

5.   I make this affidavit in support of an application for a tracking warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the GPS or latitude-longitude location of the cellular telephones assigned call numbers

> a.   **(267) 228-5466** (the "SNELL Cell Phone"), whose wireless service provider is AT&T, a company headquartered at 11760 US Highway 1, Suite 600, North Palm Beach, Florida, 33408, which is described in "ATTACHMENT A – PROVIDER WARRANT," including prospective, real-time cell-site data and related location information.

3

TW01-0011

AO 102 (01/09) Application for a Tracking Warrant   *AUSA Maiatico (EDPA) & AUSA Derek Hines (DMD) authorizing*

# UNITED STATES DISTRICT COURT

for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe*<br>*the object or property to be used for tracking)*<br>The cellular phone bearing number (267) 228-5466 | )<br>)<br>)<br>)   Case No.   17-1515-M<br>)<br>) |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of
21  U.S.C. §  846  . Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

- ☑ The person, property, or object is located in this district.
- ☐ The person, property, or object is not now located in this district, but will be at the time of execution.
- ☐ The activity in this district relates to domestic or international terrorism.
- ☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

- ☑ evidence of a crime;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☑ Delayed notice of  30  days (give exact ending date if more than 30 days:  _____  ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S/A Joseph W. O'Connor, FBI
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date:  11-9-17

*Judge's signature*

City and state:  Philadelphia, PA

The Hon. Thomas J. Rueter, U.S.M.J.
*Printed name and title*

AO 104 (Rev. 11/13) Tracking Warrant   AUSA Maiotico (EDPA) & AUSA Derek Hines (DMD) a threatening

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

In the Matter of the Tracking of  )
*(Identify the person, property, or object to be tracked)*  )
  )   Case No.   17 - 1515 - m
The cellular phone bearing number (267) 228-5466  )
  )
  )

## TRACKING WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☒ is located in this district;   ☐ is not now located in this district, but will be at execution;   ☐ the activity in this district relates to domestic or international terrorism;   ☐ other:

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)* ☒ using the object   ☐ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☐ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device:

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device by ___November 19, 2017___ *(not to exceed ten days)* and may continue use for __45__ days *(not to exceed 45)*. The tracking may occur within this district or another district. To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☐ into the vehicle described above   ☐ onto the private property described above

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to *(United States Magistrate Judge)*   Duty Magistrate   and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*

☒ for __30__ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   *11-9-17  1:30p*  

_____
*Judge's signature*

City and state:   Philadelphia, PA

The Hon. Thomas J. Rueter, U.S.M.J.
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE CELLULAR
TELEPHONE ASSIGNED CALL
NUMBERS **(267) 228-5466** whose wireless
service provider is AT&T, a company
headquartered at 11760 US Highway 1, Suite
600, North Palm Beach, Florida, 33408

$17-1515-m$

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
A TRACKING WARRANT

### INTRODUCTION

I, Joseph W. O'Connor, Special Agent with the Federal Bureau of Investigation

(FBI), being duly sworn, depose and state that:

1.      Your affiant, Special Agent, Joseph W. O'Connor is an investigative or law

enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an

officer of the United States who is empowered by law to conduct investigations of, and to make

arrests for, offenses enumerated in 18 U.S.C. § 2516. Your affiant is a Special Agent of the Federal

Bureau of Investigation (FBI) currently employed by the Philadelphia Division.

2.      I am a law enforcement officer with the Federal Bureau of Investigation who has

been so employed since 2017.   For the past month I have been assigned to one of the Public

Corruption squads in the Philadelphia Division of the FBI.   This Public Corruption squad

investigates crimes involving the violation of Civil Rights, fraud against the government, and law

enforcement corruption.   I have participated in investigations involving: Civil Rights violations

and government fraud investigations.  Prior to my assignment with the Public Corruption squad I

was a Certified Public Accountant working for Ernst & Young in Philadelphia. Your affiant has

TW01-0009

had the opportunity to discuss the facts of this investigation with the FBI Baltimore Division case agent.

3.   Through my discussion with the Baltimore case agent, I have learned about the illegal activities of drug trafficking organizations and other organized groups, including unlawful drug distribution, public corruption (involving prison and other law enforcement personnel), and use of cellular telephones to facilitate illegal activity, aggravated assaults, and homicides. I have become familiar with techniques useful in identifying this behavior, including the use of confidential informants, physical and electronic surveillance, telephone toll analysis, and investigative interviews. I have become familiar with the terminology and codes used by narcotic suppliers to thwart detection by law enforcement.

4.   I have personally consulted with the case agent in charge of the investigation of the offenses referred to herein, who has reviewed reports and has had discussions with other Special Agents, Task Force Officers (TFOs), and employees of the FBI, as well as other law enforcement agencies related to the investigation of the Defendant. I am fully familiar with the facts and circumstances of the investigation.   The statements contained in this affidavit are on information provided to me by Special Agents and TFOs of the FBI (collectively, the "Investigators"). The information contained in this affidavit is also based in part on: information provided by RAYAM, some of which is corroborated by two other cooperating Baltimore City Police Officers who were indicted – Former Detectives Momodu GONDO and Maurice WARD. As explained below, the information is also partially corroborated by court authorized toll records, historical cell site information, bank records, including photographs of SNELL making deposits, text messages on RAYAM's phone, and a recorded jail call with SNELL after RAYAM's arrest. Because this affidavit is being submitted for the limited purpose of securing authorization for the execution of

2

TW01-0010

a search and seizure warrant, I have not included each and every fact known to me concerning this investigation. Nor, do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit. Your affiant has not, however, excluded any information known to your affiant which would defeat the determination of probable cause. I have set forth only the facts that I believe necessary to establish the foundation of probable cause in support of this application for search and seizure warrant. Based on evidence developed during the course of the investigation and outlined in part below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that SNELL did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, including, but not limited to, RAYAM, to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1) (the "Target Offense").

5.        I make this affidavit in support of an application for a tracking warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the GPS or latitude-longitude location of the cellular telephones assigned call numbers

> **a.**   **(267) 228-5466** (the "SNELL Cell Phone"), whose wireless service
> provider is AT&T, a company headquartered at 11760 US Highway 1,
> Suite 600, North Palm Beach, Florida, 33408, which is described in
> "ATTACHMENT A – PROVIDER WARRANT," including
> prospective, real-time cell-site data and related location information.

3

6. One purpose of this application is to determine conclusively the location of Eric SNELL's Cell Phone. The location of the target cell phone is believed to currently be located in this district because, as described below, the user of the aforementioned Cell Phone resides in Philadelphia Pennsylvania as determined by the following subscriber and user information from AT&T:

> a. (267) 228-5466 is subscribed and utilized by Eric SNELL at 2815 Ryerson Place Philadelphia, PA 19114.

## BACKGROUND

7. Beginning in 2016, the Federal Bureau of Investigation (FBI) initiated an investigation involving police officers assigned to the Baltimore Police Department ("BPD"). The investigation established that multiple police officers within the BPD violated the legitimate purposes of the BPD in order to enrich themselves through illegal conduct, including conspiracy to distribute narcotics, robbery, extortion under color of law, making false statements to conceal illegal activities, and committing time and attendance fraud. These officers included Detective Jemell RAYAM and other detectives and sergeants. In 2017, these eight BPD officers, including detectives and sergeants, were charged with RICO, in violation of 18 U.S.C. § 1962(c) and RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) and other related criminal offenses. *See United States v. Momodu Bondeva Kenton Gondo, et al.; District of Maryland Criminal Docket No. JKB-17-0106; United States v. Thomas Allers; District of Maryland Criminal Docket No. 17-452.* These eight officers were arrested. After his arrest, Detective Jemell Rayam began cooperating with the United States and providing information about his criminal conduct, including information regarding a narcotics trafficking conspiracy with co-conspirator Eric Troy

4

TW01-0012

Snell. Eric Troy Snell was a former member of the Baltimore Police Department and is currently a police officer in the Philadelphia Police Department (PPD).

8.      Your Affiant now submits this affidavit in support of an application for a tracking warrant for the SNELL Cell Phone. Your Affiant believes that real time location information regarding the SNELL Phone will assist law enforcement with determining the location of SNELL and executing an arrest warrant on SNELL. Your Affiant anticipates receiving an arrest warrant for SNELL on or about November 9, 2017 and arresting him the following week in a coordinated law enforcement operation. The location information for the SNELL Cell Phone will allow law enforcement to ascertain SNELL's location and effectuate his arrest in the safest manner for all parties involved. It will also provide evidence of SNELL's location, including where he resides and where the Target Offense occurred.

9.      Based on evidence developed during the course of the investigation and outlined in part below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that SNELL did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, including, but not limited to, RAYAM, to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1) (the "Target Offense").

## PROBABLE CAUSE

1.      On March 1, 2017, BPD officers Jemell RAYAM, Momodu GONDO, and Maurice WARD were arrested and charged with RICO, in violation of 18 U.S.C. §

5

TW01-0013

1962(c) and RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) and other related criminal offenses and were subsequently remanded into the custody of the United States Marshals Service (USMS) for detention until trial.

2.      During the following weeks and months, RAYAM, GONDO and WARD participated in proffer meetings with the United States Attorney's Office and FBI. During some of these proffer meetings, these individuals provided information to FBI investigators. Some of the information provided to investigators had been known, and some of the information was new. Some of the information not previously known to the principal investigators and has since been corroborated, through various methods, and deemed to be credible.

3.      On or about October 3, 2016, JENKINS, RAYAM and detectives in the BPD, acting in their capacity as police officers, engaged in a high-speed police chase of a vehicle driven by G.H. G.H. fled and threw over 9 ounces of cocaine out the window of his vehicle before crashing his vehicle near Mondawmin Mall in Baltimore, Maryland. Near the scene of the crash, BPD officers retrieved the cocaine, RAYAM received the cocaine, and JENKINS and told RAYAM to sell the cocaine and give JENKINS proceeds of the sale, which RAYAM agreed to do. RAYAM, WARD, and GONDO have each proffered with the United States and provided information about this episode. G.H. has testified in the grand jury and provided information that he threw approximately 9 ounces of cocaine out the window during this episode. RAYAM proffered that he received this cocaine during this episode.

4.      RAYAM proffered that he told SNELL that he had cocaine, and SNELL asked RAYAM to provide SNELL with cocaine that was stolen from G.H. and not submitted as evidence to the BPD. RAYAM agreed to do so. Your affiant has reviewed toll records for RAYAM and believes this conversation occurred on October 18 and 19, 2016. On these dates,

6

TW01-0014

RAYAM had phone calls with a phone believed to be used by SNELL (based on subscriber information)

5.      RAYAM proffered that he traveled to Philadelphia, PA, and met SNELL at his residence. RAYAM proffered that he provided cocaine to SNELL and SNELL made arrangements to meet with SNELL's brother who would sell the cocaine for SNELL and RAYAM. The investigators have reviewed historical cell site information for phones utilized by SNELL and RAYAM. The historical cell site information shows both phones in the same vicinity in Philadelphia on October 20, 2016. Accordingly, the investigators believe that RAYAM and SNELL met to exchange the cocaine on October 20, 2016. According to RAYAM, RAYAM, SNELL, and SNELL's brother met and discussed the sale of the cocaine, the price the cocaine should be sold for, the amount of money that SNELL's brother would pay SNELL after the sale of the cocaine, and the amount of money that SNELL would pay RAYAM after the sale of the cocaine. RAYAM proffered that SNELL gave his brother the cocaine that RAYAM had given him and that had been taken from G.H.

6.      RAYAM proffered that SNELL and RAYAM agreed that RAYAM would provide SNELL with heroin for SNELL to sell and distribute. Based on a review of toll records and other information provided by RAYAM, the investigators believe this conversation occurred on or about October 23, 2016.

7.      RAYAM proffered that he travelled to Philadelphia to meet with SNELL and provide SNELL with approximately 80 grams of heroin that RAYAM had received from JENKINS to sell. Historical cell site information confirms that RAYAM travelled to Philadelphia on October 24, 2017 and that RAYAM was in the vicinity of the Target Location that day. RAYAM proffered that SNELL agreed to give the heroin to SNELL's brother to sell.

7

TW01-0015

8.      Text messages derived from RAYAM's personal cellular telephone reveal that on October 28, 2016, RAYAM sent a text message to SNELL's telephone which read "Yo let me know if u can get to d bank. Even if that's all u have. I jus give it to the other dude in with me." Additionally, RAYAM sends SNELL an image on October 28, 2016 containing the numbers 5501571533. The investigators believe that these text messages refer to the repayment of the illegal drug debt. The investigators have reviewed bank records for RAYAM and has determined that the aforementioned image RAYAM sent to SNELL was the personal PNC Bank account number which RAYAM shared with his wife. Further review of RAYAM's bank account records show that a deposit in the amount of $1,000 was made from a PNC branch in Philadelphia on October 28, 2016. RAYAM proffered that the $1,000 deposited into his account on October 28, 2016 were proceeds from the sale of cocaine. The investigators has received a photograph from PNC bank which your affiant believes shows SNELL at the branch meeting with a teller during the aforementioned transaction.

9.      The investigators believe that text messages derived from RAYAM's personal cellular telephone show that between November 6, 2016 and November 9, 2016, RAYAM and SNELL discuss additional payment RAYAM is expecting from the proceeds derived from the sale of cocaine. On October 6, 2016, RAYAM texts SNELL "Yo. How we looking for tomorrow. My Serg calling me like crazy. It's getting annoying." The investigators believe that in this text RAYAM is referring to JENKINS, who gave RAYAM the cocaine to sell. SNELL replies that "Before I go to work I'm going to stop by there." On November 7, 2016, SNELL sends a text to RAYAM agreeing to pay RAYAM an additional "25", (or $2,500) for additional sales of the illegal drugs. Later that day, SNELL texts RAYAM "Yo my bad bro everything straight. I had got a lil caught up with work and kids today. Couldn't meet up to grab that from

8

TW01-0016

him. I'm going to def. try to grab and put in there tomorrow." RAYAM replies to SNELL "Ok.

Don't mean to be hounding you but I'm jus telling people down here what u tell me. I thought

everything would be straight today so I paid out my pocket this morning. I really need u to put it

in there tomorrow." On November 9, 2016, RAYAM texts SNELL "You do it yet?" A review

of RAYAM's personal bank account records show that a deposit in the amount of $2,500 was

made from a PNC branch in Philadelphia on November 9, 2016 which your affiant believes are

proceeds from the sale of illegal drugs. An image of the individual depositing the money into

RAYAM's personal bank account 5501571533, was obtained from PNC Bank and can be seen

below:



11/09/2016 12:21:10.41
Teller 3
Surveillance
PNC-WELSH-ROAD

RAYAM proffered that the $2,500 deposited into his account on November 9, 2016 was from

SNELL and that the proceeds were from the sale of cocaine. When comparing this photograph

9

to a photograph derived from the motor vehicle department, investigators have confirmed that the individual depositing the money into RAYAM's bank account is SNELL.

10.     RAYAM proffered that on November 11, 2016 he travelled to Philadelphia and SNELL gave him several hundred dollars in cash from the sale of cocaine.

11.     RAYAM proffered that on November 15, 2016, SNELL agreed to meet with RAYAM at or near the Delaware House Travel Plaza so that SNELL could return the remaining heroin to RAYAM for RAYAM to distribute. On November 15, 2016, SNELL traveled to the Delaware House Travel Plaza and provided RAYAM with approximately 40 grams of heroin that his brother was unable to sell. Historical cell site information show both RAYAM's and SNELL's cellular telephones in the proximity of the Delaware House Travel Plaza on November 15, 2017. RAYAM proffered that he gave remaining heroin he received from SNELL to one of his associates.

12.     Following RAYAM's arrest on March 1, 2017, RAYAM and SNELL communicated on a recorded jail call on June 26, 2017. During this June 2017 call ,RAYAM asked SNELL "Your brother never said anything . . . everything cool yo?" and SNELL assured RAYAM that his brother had not said anything about their illegal drug trafficking. During this June 2017 call, SNELL instructed RAYAM to "say less" on the recorded jail phones so that their illegal drug trafficking operation would not be detected by law enforcement. During this June 2017 call, SNELL told RAYAM to "stand tall" and said he would "keep an eye" on RAYAM's kids -- RAYAM has advised investigators that he perceived SNELL's statement as a threat to harm RAYAM's children if RAYAM told authorities about SNELL's illegal drug trafficking.

10

TW01-0018

## **Location Information**

13.          In my training and experience, I have learned that cellular phones communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular phone broadcasts certain signals to the cellular tower that is routing its communication. Law enforcement may monitor these signals when cellular phones initiate or receive calls, and may also initiate a communication with SNELL'S Cell Phone in order to cause it to emit signals. By collecting these signals, law enforcement can relatively precisely determine the location of the cellular telephone itself.

14.          In my training and experience, I have learned that AT&T is a company that provides cellular telephone access to the general public. I also know that, as a general matter, providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data; and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower

11

TW01-0019

closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15.     Based on my training and experience, I know that AT&T can provide information about the location of the SNELL Cell Phone using cell-site data and E-911 Phase II data, GPS data, or other more precise latitude-longitude data.

## AUTHORIZATION REQUEST

16.     Based on the foregoing, I request that the Court also issue the proposed tracking warrant (the Provider Warrant) for GPS, Precision Location, or latitude-longitude data, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) and prospective cell-site data pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

17.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection of information authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cell phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, flee from prosecution, and otherwise jeopardize the investigation. *See* 18 U.S.C. § 3103a(b)(1). The warrants do not authorize the interception of any telephone calls, text messages, or Internet data, and the warrants prohibit the seizure of any tangible property. Moreover, to the extent that the warrants do authorize the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the

12

TW01-0020

collection of cell-site and related location information, and for the use of the electronic investigative technique described in "ATTACHMENTS B – LAW ENFORCEMENT WARRANT" as required pursuant to the statutory delayed notification provision. *See* 18 U.S.C. § 3103a(b).

18.      I further request that the Court authorize execution of the Law Enforcement Warrant at any time of day or night, owing to the potential need to locate the target cell phones outside of daytime hours.

19.      I further request that the Court order that all papers in support of this application, including the affidavit and tracking warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

TW01-0021

20.          A tracking warrant may not be legally necessary to compel the investigative technique described in "ATTACHMENTS B – LAW ENFORCEMENT WARRANT." Nevertheless, I hereby submit the warrant application out of an abundance of caution.

Respectfully submitted,

Joseph W. O'Connor
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me

On: ___ / / – 9 – / 7 ___

THE HONORABLE THOMAS J. RUETER
UNITED STATES MAGISTRATE JUDGE

14

TW01-0022