AO 106 (Rev. 04/10) Application for a Search Warrant   AUSA Maiolo (EDPA) & AUSA Derek Hines (DMD) authorizing

# UNITED STATES DISTRICT COURT
for the
Eastern District of Pennsylvania

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

2815 Ryerson Place, Philadelphia, Pennsylvania 19114

Case No. 17-1514-M

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment B-1

located in the ___Eastern___ District of ___Pennsylvania___, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment A-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846 | Conspiracy to distribute and possess with intent to distribute narcotics |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

S/A Joseph W. O'Connor, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 11-9-17

*Judge's signature*

City and state: Philadelphia, Pennsylvania

The Hon. Thomas J. Rueter, U.S.M.J.
*Printed name and title*

AO 93 (Rev. 11/13) Search and Seizure Warrant AUSA Maiatico (EDPA) & AUSA Derek Hines (DMD) authorizing

# UNITED STATES DISTRICT COURT
for the

Eastern District of Pennsylvania

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>2815 Ryerson Place, Philadelphia, Pennsylvania 19114 | )<br>)<br>) Case No. 17-1514-M<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the     Eastern     District of     Pennsylvania    
*(identify the person or describe the property to be searched and give its location)*:

See Attachment B-1

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment A-1

**YOU ARE COMMANDED** to execute this warrant on or before     November 23, 2017     *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Duty Magistrate    
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   11/9/17 1:30pm                    _____
                                                            *Judge's signature*

City and state:   Philadelphia, Pennsylvania        The Hon. Thomas J. Rueter, U.S.M.J.
                                                     *Printed name and title*

17-1514-M

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Special Agent (SA) Joseph W. O'Connor of the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states as follows:

### I.  INTRODUCTION

Beginning in 2016, the Federal Bureau of Investigation (FBI) initiated an investigation involving police officers assigned to the Baltimore Police Department ("BPD"). The investigation established that multiple police officers within the BPD violated the legitimate purposes of the BPD in order to enrich themselves through illegal conduct, including conspiracy to distribute narcotics, robbery, extortion under color of law, making false statements to conceal illegal activities, and committing time and attendance fraud. These officers included Detective Jemell RAYAM and other detectives and sergeants. In 2017, eight BPD officers, including RAYAM were charged with RICO, in violation of 18 U.S.C. § 1962(c) and RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) and other related criminal offenses. *See United States v. Momodu Bondeva Kenton Gondo, et al.; District of Maryland Criminal Docket No. JKB-17-0106; United States v. Thomas Allers; District of Maryland Criminal Docket No. 17-452.* These eight officers were arrested. After his arrest, Detective Jemell RAYAM began cooperating with the United States and providing information about his criminal conduct, including information regarding a narcotics trafficking conspiracy with co-conspirator Eric Troy SNELL. Eric Troy SNELL was a former member of the Baltimore Police Department and is currently a police officer in the Philadelphia Police Department (PPD).

Your Affiant now submits this affidavit in support of an application for a search and seizure warrant for the residence of SNELL located at **2815 Ryerson Place, Philadelphia, Pennsylvania 19114** (Target Location). The Target Location is located in Northeast Philadelphia near

1

Pennypack Park. As explained below, your Affiant requests a search and seizure warrant for the Target Location identified in Attachment B-1 to search for and seize the items identified in Attachment A-1.

## II. AFFIANT'S EXPERTISE AND KNOWLEDGE

1. Your Affiant has been employed as a Special Agent of the Federal Bureau of Investigation ("hereafter "FBI") since 2017 and is currently assigned to one of the FBI's Philadelphia Division's Public Corruption Squads. Your Affiant has been assigned to work public corruption investigations, with a particular focus on the corruption of state and local public officials. Your Affiant has participated in investigations of various criminal violations to include civil rights violations, government fraud and law enforcement corruption. Your Affiant has consulted with the FBI Baltimore case agent who has reviewed recorded conversations pertaining to corrupt public officials and conducted multiple interviews of subjects and witnesses involved in public corruption-related matters. Prior to being employed with the FBI, your Affiant was a Certified Public Accountant for Ernst & Young. Your Affiant has received training at the FBI Academy and is familiar with investigations concerning public corruption.

2. Your affiant has personally consulted with the case agent of this investigation who has reviewed reports and has had discussions with other Special Agents, Task Force Officers (TFOs), and employees of the FBI, as well as other law enforcement agencies related to the investigation of the Defendant. I am fully familiar with the facts and circumstances of the investigation. The statements contained in this affidavit are based on information provided to me by Special Agents and TFOs of the FBI (collectively, the "Investigators"). The information contained in this affidavit is also based in part on: information provided by RAYAM, some of which is corroborated by two other cooperating Baltimore City Police Officers who were indicted

– Former Detectives Momodu GONDO and Maurice WARD. As explained below, the information is also partially corroborated by court authorized toll records, historical cell site information, bank records, including photographs of SNELL making bank deposits into RAYAM's account, text messages on RAYAM's phone, and a recorded jail call with SNELL after RAYAM's arrest. Because this affidavit is being submitted for the limited purpose of securing authorization for the execution of a search and seizure warrant, I have not included each and every fact known to me concerning this investigation. Nor, do I request that this Court rely upon any facts not set forth herein in reviewing this affidavit. Your affiant has not, however, excluded any information known to your affiant which would defeat the determination of probable cause. I have set forth only the facts that I believe necessary to establish the foundation of probable cause in support of this application for search and seizure warrant. Based on evidence developed during the course of the investigation and outlined in part below, I submit that the facts set forth in this affidavit establish that there is probable cause to believe that SNELL did knowingly and willfully combine, conspire, confederate and agree with persons known and unknown to the Grand Jury, including, but not limited to, RAYAM, to knowingly, intentionally and unlawfully distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and a quantity of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code Section 841(a)(1) (the "Target Offense").

3. Based on your affiant's training and experience, coupled with the training and experience of the FBI Baltimore case agent and of other Special Agents and TFOs with working this investigation, I know that:

3

a. Individuals who participate in the Target Offense will often store and maintain evidence of their crime (described in Attachment A-1), in their residences and vehicles parked at their residences. Sometimes such individuals also maintain books, records, receipts, notes, ledgers, bank records, money orders, other papers, and electronic records relating to the Target Offense. These books, records, receipts, notes, ledgers, bank records, money orders, electronic records etc., are maintained in locations to which the offenders have ready access, such as in secure locations within their residences and their curtilage, the residences of family members, friends and associates, in addition to their place of employment such as offices, desks, lockers, storage areas with which the offender is associated. After communicating with investigators at FBI Baltimore about their recent experiences arresting BPD officers and searching their residences, I know that police officers are likely to maintain for lengthy periods of time records and documents which are evidence of the crimes they have committed and they are likely to hide these records and documents at their residences.

b. Individuals engaged in the type of criminal conduct constituting the Target Offense described herein conceal in their residences and/or curtilage, and the residences or living areas of family members, friends and associates, quantities of currency, financial instruments and other items of value for safekeeping, including fruits of their crime, such as ill-gotten gains derived from the commission of the Target Offense.

SW02-0034

c. Individuals engaged in the type of criminal conduct constituting the Target Offense described herein commonly maintain telephone numbers and address books or papers which reflect names, addresses and/or telephone numbers for their associates in their illegal organization. These individuals often utilize cellular telephones, personal computers, and other electronic devices, applications (apps.) and telephone systems to maintain contact with associates in their illegal activities. These telephone records, bills, and devices are often found in their place of residence, or the residences or living spaces of family members, friends or associates. After communicating with investigators at FBI Baltimore about their recent experiences arresting BPD officers and searching their residences, I know that police officers are likely to maintain in their residences electronic devices, including cellular telephones, which contain evidence of their crimes for many months and sometimes years after the crimes were committed.

d. Individuals engaged in the type of criminal conduct constituting the Target Offense described herein often take photographs of themselves, their associates, their co-conspirators, their property and illegal contraband. These photos are usually maintained in their place of residence, or the residences or living spaces of family members, friends or associates.

e. Individuals engaged in the type of criminal conduct constituting the Target Offense described herein maintain documents, letters and records, including receipts, relating to their illegal activities for long periods of time. This documentary evidence is usually secreted in their place of residence, or

5

the residences or living spaces of family members, friends or associates. This documentary evidence includes, but is not limited to, bank records, telephone numbers, telephone books, address books, credit card and hotel receipts, electronic payment receipts, airplane and bus tickets and receipts, car rental receipts, money orders, cashier's checks relating to cash transactions, pawn receipts, home improvement receipts, and other sales receipts.

### III.   PREMISES TO BE SEARCHED

4.   Accordingly, your affiant submits there is probable cause to believe that the items set forth in Attachment A-1, all of which constitute evidence, fruits, and instrumentalities of, *inter alia*, violations of the Target Offense, are presently located at the following location (the "Target Location"), including the residence, living spaces at the residence, curtilage, yard, land, perimeter, garage, vehicles and all areas within the four corners of the Target Location:

   a. The Target Location: The residence of Eric Troy SNELL located at **2815 Ryerson Place, Philadelphia, Pennsylvania 19114** (See Attachment B-1). This property is listed in the City of Philadelphia Office of Property Assessment as being owned by Eric T. Snell and Barbara J Godwin. According to a search of law enforcement databases on November 8, 2017, MVA records and cellular telephone records indicate that 2815 Ryerson Place, Philadelphia, Pennsylvania 19114, is the last known address of SNELL. SNELL's employer, The City of Philadelphia Police Department, lists 2815 Ryerson Place, Philadelphia, Pennsylvania 19114 in his personnel file as his residence. It is your Affiant's understanding that SNELL is required to maintain his current address on file with the PPD. Law enforcement have queried multiple database and have not located any other potential addresses associated with SNELL. As recently as the week of November 6, 2017, law enforcement have conducted surveillance at the Target

SW02-0036

Location and observed a BMW at the residence which, according to RAYAM, is a vehicle owned by SNELL.

## IV. BACKGROUND

5. On March 1, 2017, BPD officers Jemell RAYAM, Momodu GONDO, and Maurice WARD were arrested and charged with RICO, in violation of 18 U.S.C. § 1962(c) and RICO Conspiracy, in violation of 18 U.S.C. § 1962(d) and other related criminal offenses and were subsequently remanded into the custody of the United States Marshals Service (USMS) for detention until trial.

6. During the following weeks and months, RAYAM, GONDO and WARD participated in proffer meetings with the United States Attorney's Office and FBI. During some of these proffer meetings, these individuals provided information to FBI investigators. Some of the information provided to investigators had been known, and some of the information was new. Some of the information not previously known to the principal investigators and has since been corroborated, through various methods, and deemed to be credible.

7. On or about October 3, 2016, JENKINS, RAYAM and detectives in the BPD, acting in their capacity as police officers, engaged in a high-speed police chase of a vehicle driven by G.H. G.H. fled and threw over 9 ounces of cocaine out the window of his vehicle before crashing his vehicle near Mondawmin Mall in Baltimore, Maryland. Near the scene of the crash, BPD officers retrieved the cocaine, RAYAM received the cocaine, and JENKINS told RAYAM to sell the cocaine and give JENKINS proceeds of the sale, which RAYAM agreed to do. RAYAM, WARD, and GONDO have each proffered with the United States and provided information about this episode. G.H. has testified in the grand jury and provided information

7

that he threw approximately 9 ounces of cocaine out the window during this episode. RAYAM proffered that he received this cocaine during this episode.

8. RAYAM proffered that he told SNELL that he had cocaine, and SNELL asked RAYAM to provide SNELL with cocaine that was stolen from G.H. and not submitted as evidence to the BPD. RAYAM agreed to do so. Your affiant has reviewed toll records for RAYAM and believes this conversation occurred on October 18 and 19, 2016. On these dates, RAYAM had phone calls with a phone believed to be used by SNELL (based on subscriber information)

9. RAYAM proffered that he traveled to Philadelphia, PA, and met SNELL at his residence. RAYAM proffered that he provided cocaine to SNELL and SNELL made arrangements to meet with SNELL's brother who would sell the cocaine for SNELL and RAYAM. The investigators have reviewed historical cell site information for phones utilized by SNELL and RAYAM. The historical cell site information shows both phones in the same vicinity in Philadelphia on October 20, 2016. Accordingly, the investigators believe that RAYAM and SNELL met to exchange the cocaine on October 20, 2016. According to RAYAM, RAYAM, SNELL, and SNELL's brother met and discussed the sale of the cocaine, the price the cocaine should be sold for, the amount of money that SNELL's brother would pay SNELL after the sale of the cocaine, and the amount of money that SNELL would pay RAYAM after the sale of the cocaine. RAYAM proffered that SNELL gave his brother the cocaine that RAYAM had given him and that had been taken from G.H.

10. RAYAM proffered that SNELL and RAYAM agreed that RAYAM would provide SNELL with heroin for SNELL to sell and distribute. Based on a review of toll records

SW02-0038

and other information provided by RAYAM, the investigators believe this conversation occurred on or about October 23, 2016.

11. RAYAM proffered that he travelled to Philadelphia to meet with SNELL and provide SNELL with approximately 80 grams of heroin that RAYAM had received from JENKINS to sell. Historical cell site information confirms that RAYAM travelled to Philadelphia on October 24, 2017 and that RAYAM was in the vicinity of the Target Location that day. RAYAM proffered that SNELL agreed to give the heroin to SNELL's brother to sell.

12. Text messages derived from RAYAM's personal cellular telephone reveal that on October 28, 2016, RAYAM sent a text message to SNELL's telephone which read "Yo let me know if u can get to d bank. Even if that's all u have. I jus give it to the other dude in with me." Additionally, RAYAM sends SNELL an image on October 28, 2016 containing the numbers 5501571533. The investigators believe that these text messages refer to the repayment of the illegal drug debt. The investigators have reviewed bank records for RAYAM and has determined that the aforementioned image RAYAM sent to SNELL was the personal PNC Bank account number which RAYAM shared with his wife. Further review of RAYAM's bank account records show that a deposit in the amount of $1,000 was made from a PNC branch in Philadelphia on October 28, 2016. RAYAM proffered that the $1,000 deposited into his account on October 28, 2016 were proceeds from the sale of cocaine. The investigators have received a photograph from PNC bank which your affiant believes shows SNELL at the branch meeting with a teller during the aforementioned transaction.

13. The investigators believe that text messages derived from RAYAM's personal cellular telephone show that between November 6, 2016 and November 9, 2016, RAYAM and SNELL discuss additional payment RAYAM is expecting from the proceeds derived from the

9

sale of cocaine. On October 6, 2016, RAYAM texts SNELL "Yo. How we looking for tomorrow. My Serg calling me like crazy. It's getting annoying." The investigators believe that in this text RAYAM is referring to JENKINS, who gave RAYAM the cocaine to sell. SNELL replies that "Before I go to work I'm going to stop by there." On November 7, 2016, SNELL sends a text to RAYAM agreeing to pay RAYAM an additional "25", (or $2,500) for additional sales of the illegal drugs. Later that day, SNELL texts RAYAM "Yo my bad bro everything straight. I had got a lil caught up with work and kids today. Couldn't meet up to grab that from him. I'm going to def. try to grab and put in there tomorrow." RAYAM replies to SNELL "Ok. Don't mean to be hounding you but I'm jus telling people down here what u tell me. I thought everything would be straight today so I paid out my pocket this morning. I really need u to put it in there tomorrow." On November 9, 2016, RAYAM texts SNELL "You do it yet?" A review of RAYAM's personal bank account records show that a deposit in the amount of $2,500 was made from a PNC branch in Philadelphia on November 9, 2016 which your affiant believes are proceeds from the sale of illegal drugs. An image of the individual depositing the money into RAYAM's personal bank account 5501571533, was obtained from PNC Bank and can be seen

below:



11/09/2016 12:21:10.41
Teller 3
Surveillance
PNC-WELSH-ROAD

RAYAM proffered that the $2,500 deposited into his account on November 9, 2016 was from SNELL and that the proceeds were from the sale of cocaine. When comparing this photograph to a photograph derived from the motor vehicle department, investigators have confirmed that the individual depositing the money into RAYAM's bank account is SNELL.

14. RAYAM proffered that on November 11, 2016 he travelled to Philadelphia and SNELL gave him several hundred dollars in cash from the sale of cocaine.

11

15. RAYAM proffered that on November 15, 2016, SNELL agreed to meet with RAYAM at or near the Delaware House Travel Plaza so that SNELL could return the remaining heroin to RAYAM for RAYAM to distribute. On November 15, 2016, SNELL traveled to the Delaware House Travel Plaza and provided RAYAM with approximately 40 grams of heroin that his brother was unable to sell. Historical cell site information show both RAYAM's and SNELL's cellular telephones in the proximity of the Delaware House Travel Plaza on November 15, 2017. RAYAM proffered that he gave remaining heroin he received from SNELL to one of his associates.

1. Following RAYAM's arrest on March 1, 2017, RAYAM and SNELL communicated on a recorded jail call on June 26, 2017. During this June 2017 call, RAYAM asked SNELL "Your brother never said anything . . . everything cool yo?" and SNELL assured RAYAM that his brother had not said anything about their illegal drug trafficking. During this June 2017 call, SNELL instructed RAYAM to "say less" on the recorded jail phones so that their illegal drug trafficking operation would not be detected by law enforcement. During this June 2017 call, SNELL told RAYAM to "stand tall" and said he would "keep an eye" on RAYAM's kids -- RAYAM has advised investigators that he perceived SNELL's statement as a threat to harm RAYAM's children if RAYAM told authorities about SNELL's illegal drug trafficking.

16.

17. Your affiant seeks authorization to search the Target Location, including the residence, living spaces at the residence, curtilage, yard, land, perimeter, garage, vehicles and all areas within the four corners of the Target Location. Your affiant seeks authorization to search the Target Location as identified in Attachment B-1 to locate the items identified in Attachment A-1.

SW02-0042

## IV. CONCLUSION

18. Based upon the foregoing, I respectfully submit that there is probable cause to believe that there will be found in the respective Target Location(s) the items set forth in Attachment A-1, all of which constitute evidence, fruits, and instrumentalities of, inter alia, violations of the Target Offenses.

19. Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search and seizure warrant for each of the Target Location(s) and identified in Attachments B-1 and authorize the search and seizure of the items described in Attachment A-1.

*[signature]*
Joseph W. O'Connor
Special Agent
Federal Bureau of Investigation

Sworn to before me this  9th  day of November, 2017

*[signature]*
The Honorable Thomas J. Reuter
UNITED STATES MAGISTRATE JUDGE

SW02-0043

## ATTACHMENT A-1
### ITEMS TO BE SEIZED

1. Bank records, bank checks and deposits, accounting information, receipts, cashier's checks, money orders, ledgers, financial instruments and records, records of assets, electronic records of financial transactions, travel records, EZ Pass records, credit card records, and other financial documents.

2. U.S. currency, foreign currency, jewelry, watches, precious metals and other financial assets.

3. Records that identify other co-conspirators including, but not limited to: address books, telephone books, rolodexes, telephones, cell phones, computers, tablets, laptops, pagers, or personal devices with stored telephone information, electronic devices, notes reflecting telephone and pager numbers, photographs [to include electronic and still photos, movies, slides, and video recordings], and audiotape recordings of conversations, including those made over telephone answering machines;

4. Safes, combination or key-lock strong boxes or other secure storage containers, suitcases, locked cabinets and other types of locked or closed containers, and hidden compartments that may contain any of the foregoing.

5. Items used to facilitate possession, sale and concealment of narcotics trafficking, including but not limited to weapons, ballistic vests, clothing, or gear issued by the Philadelphia Police Department.

SW02-0044

## ATTACHMENT B-1



2815 Ryerson Place, Philadelphia, Pennsylvania 19114 ("Target Location") is further described as a three story row home with a white one car garage. The home is constructed of red brick with a covered front porch which is shared with a residence with address 2813 Ryerson Place. The front of the home has a white bay window on the second level with six window panes. The third level has two white windows. When facing the home, the main entrance door is located on the right side of the front porch which left of the garage. The numbers 2815 are located above the mailbox which is mounted to the right of the main entrance. Your affiant seeks authorization to search all of 2815 Ryerson Place, including the residence, living spaces at the residence, curtilage, yard, land, perimeter, garage, vehicles and all areas within the four corners of the Target Location.

SW02-0045